UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
                                                                  :
ELIZABETH DIAMOND                                                 :
                                                                  :   08 Civ. 7562 (SHS)
                                                                  :
                                  Plaintiff,                      :
                                                                  :   OPINION
             -against-                                            :
                                                                  :
                                                                  :
RELIANCE STANDARD LIFE INSURANCE                                  :
                                                                  :
                                  Defendant.                      :
                                                                  :
------------------------------------------------------------------x

SIDNEY H. STEIN, U.S. District Judge.

    Plaintiff Elizabeth Diamond brings this ERISA action for insurance benefits allegedly due to her from defendant Reliance Standard Life Insurance Company. The parties have now each moved for summary judgment. Because Reliance's decision to terminate Diamond's benefits was arbitrary and capricious, this Court grants plaintiff's motion for summary judgment, orders defendant to reinstate Diamond's disability benefits pursuant to her insurance policy, and denies Reliance's motion for summary judgment.

**I.    BACKGROUND**

    The following facts are undisputed.

    While working for Paine Webber as a desktop publishing operator, Elizabeth Diamond was covered by a Group Long Term Disability Insurance policy ("LTD policy" or "Plan") issued by Reliance Standard Life Insurance Company ("Reliance"). (Administrative Record ("AR") at 218-224; 229-255; Pl.'s Local Civil Rule 56.1 Statement of Undisputed Facts ("Pl.'s 56.1") ¶ 1; Def.'s Local Civil Rule 56.1 Response to Undisputed Facts ("Def.'s 56.1") ¶ 1.) Diamond ceased work on September 9, 2000 and first applied for benefits under the LTD policy on or about March 8, 2001. (Pl.'s 56.1 ¶ 3; Def.'s 56.1 ¶ 3.)

1

In a letter dated March 26, 2001, Reliance instructed plaintiff that if she thought her illness would prevent her from working for more than 12 months, she "should apply for Social Security Disability Insurance Benefits." (AR 216.) Attached to this letter was a fact sheet entitled "Advantages of Social Security Disability Benefits." (AR 217.) In a letter dated August 24, 2002, the Social Security Administration found that plaintiff was disabled and awarded her benefits accordingly. (AR 276.) Two years later, the Social Security Administration reviewed plaintiff's claim and found that her disability was continuing. (AR 286.)

On September 8, 2004, Dr. Scott Bernstein (Diamond's treating physician) listed her diagnoses as "Bechet's disease, Fibromyalgia, Hyperlipidemia, Hypothyroidism, Migraine headaches, Metabolic syndrome, Depression, and Gastritis," and he reported that Diamond indicated symptoms of "Chronic fatigue and myalgias, [d]aily debilitating headaches," and "[f]requent breakouts of sores on [Diamond's] outer body and GI tract," and "nausea." (Pl.'s 56.1 ¶ 5; Def.'s 56.1 ¶ 5; AR 20.) Bechet's disease is a chronic lifelong disorder, with no cure, that causes the inflammation of small blood vessels throughout the body. (Pl.'s 56.1 ¶ 6; Def.'s 56.1 ¶ 6.) Dr. Bernstein noted in his records that Diamond needed "daily rest" and that she had reported she was often so tired that she couldn't even take a shower or get out of bed. He further noted that Diamond was not able to work even part time due to her condition. (Pl.'s 56.1 ¶¶ 7-8; Def.'s 56.1 ¶¶ 7-8; AR 21.) On July 12, 2005, Dr. Bernstein indicated that Diamond had 20% of her "functional abilities" and had "severe symptoms, even at rest." (Pl.'s 56.1 ¶ 11; Def.'s 56.1 ¶ 11.)

In addition to the diagnoses made by Dr. Bernstein, plaintiff was also diagnosed with "chronic migraine[s]" by Dr. Mark Green at Columbia University Headache Center where Diamond sought treatment on July 12, 2004, (Pl.'s 56.1 ¶ 15; Def.'s 56.1 ¶ 15; AR 321), and she was also treated by Dr. Melissa Yu in July 2005, who diagnosed Diamond has having an "intractable migraine." (Pl.'s 56.1 ¶ 17; Def.'s 56.1 ¶ 17; AR 348.) Dr. Yu also stated that

2

Diamond "was stable, but has failed multiple medications in the past," and that Diamond had "a degree of neurological impairment," bust still had the ability "to carry out most activities of daily living" despite suffering from "4-5 disabling migraines per month." (Pl.'s 56.1 ¶ 17; Def.'s 56.1 ¶ 17; AR 349.)

Reliance initially denied benefits to Diamond on June 14, 2002 on the grounds that she suffered from no physical impairment that would prevent her from performing the duties of her sedentary occupation. (Pl.'s 56.1 ¶ 18; Def.'s 56.1¶ 18; AR 3-4.) The relevant part of the LTD policy states as follows:

> "Totally Disabled" and "Total Disability" mean that as a result of an Injury or Sickness:
> (1) . . . for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her regular occupation . . . .
>
> (2) after a Monthly Benefit has been paid for 24 months, an insured cannot perform the material duties of *any* occupation. Any occupation is one that the Insured's education, training, or experience will reasonably allow. We consider the Insured Totally Disabled if due to an Injury or Sickness he or she is capable of only performing the material duties on a part-time basis or part of the material duties on a [f]ull-time basis.

(Pl.'s 56.1 ¶ 19; Def.'s 56.1 ¶ 19) (emphasis added). After exhausting her administrative remedies, Diamond filed an action in federal court in 2003. See Diamond v. Reliance Standard Life Insurance Company, 03 Civ. 6757 (SHS) (Pl.'s 56.1 ¶ 20; Def.'s 56.1 ¶ 20.) That litigation was settled in July 2004. Pursuant to the settlement agreement, Reliance agreed to pay Diamond disability benefits with interest and attorney's fees. (Pl.'s 56.1 ¶ 21; Def.'s 56.1 ¶ 21.) Reliance maintains that the reason it settled was because, at the time, it could not locate plaintiff's file in order to properly defend the suit. They contend that they never conceded that Diamond was "disabled" pursuant to her policy with Reliance.

After the settlement, Reliance located Diamond's file and issued a letter dated August 30, 2005, denying LTD benefits to Diamond effective October 8, 2005. Specifically, Reliance

concluded that Diamond was capable of performing the duties of her own occupation. (Pl.'s 56.1 ¶ 27; Def.'s 56.1 ¶ 27.) Diamond appealed that denial of benefits, citing the various diseases Dr. Bernstein diagnosed her with and how the symptoms of those diseases prevented her from returning to even a part-time work schedule. (Pl.'s 56.1 ¶¶ 30-34; Def.'s 56.1 ¶¶ 30-34.)

To evaluate Diamond's appeal, Reliance had Diamond's file reviewed by Dr. Mark Burns. (Pl.'s 56.1 ¶ 30-34; Def.'s 56.1 ¶ 36.) Dr. Burns did not examine Diamond but determined that Reliance was correct to terminate Diamond's LTD benefits because the "medical records lack evidence of an impairment that would prevent Ms. Diamond from performing sedentary work." (Pl.'s 56.1 ¶ 37; Def.'s 56.1 ¶ 37.) According to Dr. Burns, the records documented esophageal lesions and abdominal pain attributable to Bechet's disease but did not document other symptoms Diamond complained of. (Pl.'s 56.1 ¶ 38; Def.'s 56.1 ¶ 38.) Dr. Burns also concluded that while "flares of the skin could cause absence from work during the flares," there was "no evidence of physical injury that would limit work in between flares." (Pl.'s 56.1 ¶ 40; Def.'s 56.1 ¶ 40.) Dr. Burns stated that he could not identify the cause of Diamond's self-reported chronic fatigue. (Pl.'s 56.1 ¶ 41; Def.'s 56.1 ¶ 41.) It was on the basis of Dr. Burns' review of plaintiff's medical records that Reliance decided to uphold its decision to terminate plaintiff's disability payments. (AR 5-6.)

Plaintiff then filed the instant lawsuit, claiming the denial of her appeal and termination of her LTD benefits was arbitrary and capricious, and now seeks to have her LTD benefits reinstated, retroactively, at the rate of $1,576.14 a month. She also seeks attorney's fees, costs, and prejudgment interest.

## II.   DISCUSSION

### A. The Summary Judgment Standard

Summary judgment is appropriate only if the evidence shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P.

4

56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  In determining whether a genuine issue of material fact exists, the Court "is to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004).  Nonetheless, the party opposing summary judgment "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence" in support of its factual assertions.  D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998).  The same standard applies where the parties file cross-motions for summary judgment, and "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." Morales v. Quintel Entm't, Inc., 249 F.3d 115, 121 (2d Cir. 2001).

  B. Legal Standard Governing Plaintiff's ERISA Claim

"ERISA does not set out the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 (1989).  Rather, the Supreme Court has explained that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the [plan] administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Id. at U.S. 115.  Where, as here, "written plan documents confer upon a plan administrator the discretionary authority to determine eligibility," courts "will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious." Hobson v. Metro. Life. Ins. Co., 574 F.3d. 75, 82 (2d Cir. 2009); see also Lanoue v. Prudential Ins. Co. of Am., No. 07 Civ. 1756, 2009 U.S. Dist. LEXIS 95086, at *7 (D. Conn. Sept. 25, 2009).

Under arbitrary and capricious review, an administrator's decision to deny ERISA benefits is overturned "only if it was without reason, unsupported by substantial evidence or erroneous as a

matter of law." Hobson, 574 F.3d. at 82-83 (quoting Pagan v. NYNEX Pension Plan, 52 F.3d 438, 442 (2d Cir. 1995)).  Substantial evidence is "such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the [decisionmaker and]…requires more than a scintilla but less than a preponderance."  Lanoue, 2009 U.S. Dist. LEXIS 95086, at *7 (citations omitted).  Courts reviewing plan administrators' benefit denials for arbitrariness and capriciousness are "not free to substitute [their] own judgment for that of the insurer as if [they] were considering the issue of eligibility anew."  Hobson, 574 F.3d at 83-84.  However, a court reviewing a plan administrator's decision must consider "whether the decision was based on a consideration of relevant factors."   Miller v. United Welfare Fund, 72 F.3d 1066, 1072 (2d Cir. 1995).  In determining whether relevant factors were considered and substantial evidence relied upon in an ERISA eligibility determination, courts are limited to the reasons given "at the time of the denial."  Lanoue, 2009 U.S. Dist. LEXIS 95086, at *8 (citations omitted).

    *1. Conflict of Interest*

  In light of the Supreme Court's decision in Metro. Life Ins. Co. v. Glenn, -- U.S. -- ,128 S. Ct. 2343, (2008), the United States Court of Appeals for the Second Circuit explained that "a plan under which an administrator both evaluates and pays benefits claims creates the kind of conflict of interest that courts must take into account and weigh as a factor in determining whether there was an abuse of discretion, but it does not make *de novo* review appropriate."  Hobson, 574 F.3d at 82-83 (citing McCauley v. First UNUM Life Ins. Co., 551 F.3d 126 (2d Cir. 2008)).  In other words, the existence of that kind of conflict is certainly a factor to be weighed, but it does not, by itself, require the court to review the plan administrator's benefit decision on a *de novo* basis.  See McCauley, 551 F.3d at 133.

  In instances where there are multiple factors for a court to consider, "any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary

6

depending upon the tiebreaking factor's inherent or case-specific importance." Glenn, 128 S. Ct at 2351.  Under this "combination-of-factors method of review," see Glenn, 128 S. Ct. at 2351, "[t]he weight given to the existence of the conflict of interest will change according to the evidence presented."  McCauley, 551 F.3d at 133.

### 2. *Procedural Irregularities*

In addition to weighing the conflict of interest, procedural irregularities in the administrative process also constitute factors that should be taken into consideration in determining whether a plan administrator abused its discretion in denying a claimant's claim for benefits under the ERISA plan.  Maxwell v. Metro. Life Ins. Co., No. 05 Civ. 0817, 2009 U.S. Dist. LEXIS 78482, at *21 (N.D.N.Y Sept. 1, 2009) (collecting cases).  Examples of procedural irregularities include the plan administrator (1) initially providing one reason for denying a benefits claim, and then offering a new reason for the denial on review, in addition to the original reason, see id. (citing Lang v. Long-Term Disability Plan of Sponsor Applied Remote Tech, Inc., 125 F.3d 794, 798-99 (9th Cir. 1997)); (2) emphasiz[ing] a certain medical report that favor[s] a denial of benefits, [and] . . . deemphasiz[ing] certain other reports that suggest[] a contrary conclusion, see Glenn, 128 S. Ct at 2351-52; (3) "rel[ying] on the opinions of its own non-treating physicians over the opinions of [p]laintiff's treating physicians," Harrison v. Prudential Ins. Co. of America, 543 F. Supp.2d 411, 421-22 (E.D. Pa. 2008) (internal quotation marks and citations omitted); (4) "revers[ing] its initial decision to award benefits despite not receiving any new medical information, Id.; and (5) "encourag[ing] [the claimant] to argue to the Social Security Administration that []he could do no work  . . . and then ignor[ing] the agency's finding in drawing its own conclusion, see Glenn, 128 S. Ct at 2351-52.

C.  Special Problems Posed by Plaintiff's Diseases

While "[t]he very concept of proof connotes objectivity," and "it is hardly unreasonable for the administrator to require an objective component of such proof," Maniatty v. Unumprovident Corp., 218 F. Supp. 2d 500, 504 (S.D.N.Y. 2002), "the subjective element of pain is an important factor to be considered in determining disability," Connors v. Conn. Gen. Life Ins, Co., 272 F.3d 127, 136 (2d Cir. 2001).  Diseases such as chronic fatigue syndrome and fibromyalgia pose unique issues for insurance plan administrators, since for these types of conditions, their "cause or causes are unknown, there is no cure, and, of greatest importance to disability law, [their] symptoms are entirely subjective."  Williams v. Aetna Life Ins. Co., 509 F.3d 317, 322 (7th Cir. 2007) (citations omitted); see also Lanoue, 2009 U.S. Dist. LEXIS 95086, at *8; Ferris v. Astrue, No. 05 Civ. 0350, 2009 U.S. Dist. LEXIS 87216, at *13-14 (N.D.N.Y. Sept. 1, 2009); Mushtare v. Astrue, No. 06 Civ. 1055, 2009 U.S. Dist. LEXIS 70982, at *12-13 (N.D.N.Y. June 27, 2009).  A growing number of courts, including the Second Circuit, have recognized that "fibromyalgia is a disabling impairment" and "there are no objective tests which can conclusively confirm the disease."  Green-Younger v. Barnhart, 335 F.3d 99, 108 (2d Cir. 2003) (collecting cases); see also Lanoue, 2009 U.S. Dist. LEXIS 95086, at *8.

Like fibromyalgia and chronic fatigue syndrome, Bechet's disease is difficult to diagnose, and there is no laboratory test to determine if an individual has Bechet's disease.  (AR 184.)  However, the Second Circuit has consistently recognized that "as a general matter, 'objective' findings are not required in order to find that an applicant is disabled."  Green-Younger, 335 F.3d 99, 108; Cruz v. Sullivan, 912 F.2d 8, 12 (2d Cir. 1990). "Subjective *pain* may serve as the basis for establishing disability, even if . . . unaccompanied by positive clinical findings of other 'objective' medical evidence."  Donato v. Sec. of Dep't of Health and Human Servs., 721 F.2d 414, 418-19 (2d Cir. 1983) (emphasis in original) (citation omitted).

8

D.  <u>Weighing the Factors Here</u>

The parties are correct that, as a matter of law, Reliance has a conflict of interest since it both has the discretion to decide whether benefits will be paid, and it is the payor of those benefits. See <u>Glenn</u>, 128 S. Ct. at 2349.  In addition, a number of procedural irregularities took place in this case.

First, it is clear that both times that Reliance denied benefits to plaintiff—the initial denial in 2001 and termination of benefits in 2005 (the benefits that Reliance agreed to pay pursuant to a settlement agreement in 2003)—Reliance emphasized the medical reports that favored denial of benefits and de-emphasized other reports that suggested a contrary conclusion.  Although this one factor alone is not dispositive and it would likely be present in nearly any case in which benefits are ultimately denied, it still weighs slightly against Reliance.

Second, it is clear that in the second denial of benefits, defendant relied more on a review of plaintiff's medical records by Dr. Burns than on the updated records from plaintiff's treating physicians.  Although an administrator is not obligated to blindly accept the findings of a treating physician, <u>Black & Decker Disability Plan v. Nord</u>, 538 U.S. 822, 833-34 (2003), those findings should not be ignored.  Indeed, especially when the chief symptoms of the illnesses are subjective—such as those symptoms associated with fibromyalgia and Bechet's disease—due weight should be given to the treating physician's findings since that physician has the most experience with the patient and his or her history with the symptoms of the illness.  Of course, courts in this district have found that an administrator's reliance on the opinions of non-examining physicians over the plaintiff's own treating physicians is not, in and of itself, arbitrary and capricious, see <u>Wagner v. First Unum Life Ins. Co.</u>, No. 02 Civ. 9135, 2003 WL 21960997, at *5 (S.D.N.Y. Aug. 13, 2003); <u>Alakozai v. Allstate Ins. Co.</u>, No. 98 Civ. 3720, 2000 WL 325685, at *7 (S.D.N.Y. March 28, 2000), but it is one factor that need be considered.

Here, Reliance <u>did</u> conduct one independent medical evaluation (IME) of plaintiff when upholding its denial of her <u>first</u> disability claim. (AR 1-6.) When Reliance first denied plaintiff's benefits in July 2001, it based its decision on Dr. Hauptman's review of plaintiff's medical records (including reports from five of her treating physicians). (AR 1-6.) In order to properly evaluate plaintiff's appeal, Reliance arranged for Dr. Alfred Becker to examine plaintiff on March 19, 2002. (AR 1-6.) Based on the findings of his report, Reliance upheld its decision to terminate plaintiff's benefits. (AR 1-6.)

In August 2005, Reliance terminated plaintiff's benefits without arranging for another IME. (AR 30-32.) In fact, in its explanation for the termination of benefits dated August 30, 2005, Reliance did not state the method by which they concluded plaintiff's benefits should be terminated. (AR 30-32.) It appears that Reliance did not even order a physician to review plaintiff's updated medical records, but simply terminated the benefits upon locating plaintiff's file. (AR 30-32.) Despite the passage of more than three years since the IME was conducted, Reliance appears to have relied on that evaluation and the review of plaintiff's medical records conducted in 2001. (AR 30-32.) If Reliance did have a physician review plaintiff's medical records in August 2005, it did not set forth who conducted the review in their explanation letter to plaintiff. (AR 30-32.)

Only upon plaintiff's appeal of the termination of her benefits on March 4, 2006, did Reliance arrange to have an independent physician review plaintiff's updated medical records. Based on Reliance's own statements in the administrative record, Reliance did not conduct an IME of plaintiff in 2006. Therefore, the only instance in which Reliance arranged for plaintiff to undergo an IME to assist it in evaluating her claims was in March 2002, more than three years prior to the termination of benefits at issue in this case.

Third, Reliance encouraged plaintiff to seek Social Security benefits, (AR 216), but did not give sufficient weight to the Social Security Administration's findings that plaintiff was (and continues to be) disabled. (AR 276-284.) In a letter dated March 26, 2001, Reliance instructed plaintiff that if she thought her illness would prevent her from working for more than 12 months, she "should apply for Social Security Disability Insurance Benefits." (AR 216.) Attached to this letter was a fact sheet entitled "Advantages of Social Security Disability Benefits." (AR 217.) As the Supreme Court has recognized, insurers typically have a financial incentive for claimants to seek and be awarded Social Security disability benefits since, pursuant to most policies, the Social Security disability benefits will be used to reduce the amount that the insurance company must pay the claimant if the insurance company also finds the claimant is disabled. Glenn, 128 S. Ct. at 2352 (citing Glenn v. Metro. Life Ins. Co., 461 F.3d 660, 666-68 (6th Cir. 2006)).

In a letter dated August 24, 2002, the Social Security Administration found that Diamond was disabled and awarded her benefits accordingly. (AR 276.) Two years later, the Social Security Administration reviewed plaintiff's claim and found that her disability was continuing. (AR 286.) It appears from the terms of the insurance policy that plaintiff had with Reliance, (AR 244), and other documents contained in the administrative record, (AR 275, 284), that Reliance did reduce the amount of benefits it paid to plaintiff based on the fact that she was receiving Social Security disability benefits.

### III. CONCLUSION

The Court has weighed the relevant factors in this case and concludes that Reliance's decision to terminate Diamond's benefits was arbitrary and capricious. Plaintiff is, therefore, entitled to summary judgment on her claim for the following reasons: (1) As a matter of law, Reliance has a conflict of interest since it both has the discretion to decide whether benefits will be paid, and it is the payor of those benefits if they are awarded. (2) There were a number of

procedural irregularities that weigh against the defendant in this case: defendant misplaced plaintiff's file at least one time; defendants emphasized reports by Diamond's non-treating physicians that favored denial of benefits and deemphasized reports by Diamond's treating physician that suggested a contrary conclusion; defendant encouraged plaintiff to seek Social Security benefits, during which she would have had to argue and prove she was disabled. Reliance had an interest in encouraging Diamond to obtain those benefits because, if her application were successful, it would lower the amount that Reliance would need to pay Diamond pursuant to her policy. (3) The nature of Diamond's disease makes it inherently difficult for doctors, even those who are actually treating her, to render a diagnosis and assess her ability to work. (4) Defendant had not conducted a physical examination of Diamond in more than three years when it revoked her disability benefits, which renders its denial less credible.

For the foregoing reasons, defendant's motion for summary judgment is denied, plaintiff's motion for summary judgment is granted, and defendant is directed to reinstate Diamond's disability benefits.

Dated: New York, New York
       December 1, 2009

                                      Sidney H. Stein, U.S.D.J.